Next case in our call is agenda number 3, case number 108354, People of the State of Illinois v. Terry Alsup You can wait a minute. There's still kind of a little bit of a crowd. That's okay. Counsel, you may proceed. May it please this honorable court, Mr. Bennett, I am Assistant State's Attorney Ashley Romito of the Cook County State's Attorney's Office on behalf of the people of the State of Illinois. The impact of the chemical composition of the drugs in a drug case cannot be overstated. And it is best illustrated here. It is unchallenged and uncontested that different trial counsel representing defendant below entirely stipulated to the fact that both heroin and cocaine were recovered at the scene of defendant's arrest. The stipulation itself makes that eminently clear. There was an express stipulation to the lab, in other words, the chemical, the chemist's report in this case, the chemist's opinion and all that was underlying it, as well as express language that the chain of custody was maintained at all times with respect to the narcotics in this case. Counsel's arguments also were very clear. The police recovered cocaine and heroin. Then again, he argued later, they availed themselves of some drugs. What counsel did was to contest that it was his client that was delivering those drugs in an open air drug market in Chicago on that day. What his argument was, while the police officers found drugs by that garbage can, both cocaine and heroin, it was not his client who placed them there. And that the officer recovering the drugs or who was conducting the surveillance could not in fact see what he was tendering in exchange for those items, paper money versus what they were. Moreover, he contested that that garbage can was within 1,000 feet of a school. Additionally, he added into the fact that the police had a motive to place those drugs that they found during that narcotics surveillance upon the defendant and that he was making a nuisance of himself, interrupting and obstructing their narcotics surveillance, coming over to interrupt what they were doing. Therefore, they had every reason in the world to place those drugs on him. And it's worth noting that trial counsel was very careful with his stipulations in this case. For example, when he stipulated that an investigator measured from point A to point B and that it was less than 1,000 feet, at no point, and it was very clear through his cross-examination, his arguments and the careful fashioning of that stipulation, he wasn't conceding that those drugs were in fact within 1,000 feet. He crossed-examined that officer. There was no exact address on 13, on Independence Street. It was an apartment building. You're guesstimating. You're not guessing for sure. Moreover, when the state's attorney attempted to enter what she termed a stipulation into the case in chief with regard to the defendant's background, counsel quickly interrupted and said, no, I am not allowing you to introduce any of my client's provables in your case in chief. He testifies that's a different story. He was not asleep at the switch here and had thoroughly gone through his discovery. When the state had attempted on another occasion to impeach a defense witness with respect to approval, counsel objected. And so far, it's that you need a chemist to identify the chemical composition of the drugs. That was the issue before this court five years ago in Woods. Whether or not a challenge to the chain of custody in absence of any objection or procedural forfeiture would not matter because it is a question of the sufficiency of the evidence. And what this court said unequivocally is no, it's not. Chain of custody is only necessary insofar as it establishes the relevance of the chemist's ultimate opinion. Otherwise, they're testifying to the chemical composition of some drugs that might have nothing to do with the case. Notably, what this court also found in Woods was that not only was it a procedurally forfeited, and it was an element, but that it was affirmatively waived. Affirmatively waived by the stipulation and the clear intent of the parties to remove all question as to the identity of the chemical composition from the case at hand. That included the expert's qualifications, attesting procedures in any issues as to chain of custody. And this court came to that conclusion by looking at the evidence in its entirety, despite the fact that there was no express language to the chain of custody being maintained at all times with respect to the evidence. With respect to the narcotics, we have that here in this case, that additional language that was not present in Woods. There were proper number inventory matches here? The inventory number, yes. So we're really dealing with the discrepancy in the description, right? We are. It's one bit of discrepancy and identity in one of the two question substances. And my position is that in light of the overall stipulation to the chain of custody in this case, that simple component is rendered meaningless and has no play. It is both forfeited, and even more, the opposite of forfeited, it's affirmatively waived by counsel agreeing to this testimony to come into the case, thereby precluding the prosecution from any ability to correct any shortcomings or discrepancy. It winds up being an ambiguity. Does the inventory, is it your position the inventory match numbers, does that save the state here? I mean, even with a stip to the entire chain of custody, do we have a different case if both the description and the inventory numbers are off? No. No. Because at the end of the day, what you still need to do is look at this in the light most favorable to the people. And in the face of a stipulation, the plain language of Woods states that the defendant may not challenge that particular fact which he stipulated to. Fifty years ago in People v. Polk, this Court stated, insofar as you need a chain of custody, if a defendant is willing to stipulate to it, he cannot change it. And it was well-settled law at that time, 50 years ago, that a defendant cannot complain of the evidence he stipulated to into the record. So discrepancies aside, the defendant affirmatively waived by agreeing to place this evidence into the record, therefore it is unassailable on appeal. In this case, by, you know, People v. Bush was decided on, or I should say it was argued on the same day as People v. Woods. And it did come down two weeks earlier, both in 2005. And in the matter of Bush, plain error was raised. It was part of the briefs, it was part of the arguments. And this Court clearly rejected it, noting that in face of affirmative waiver, the analysis with respect to plain error is not possible. We do find, despite the fact that Woods' case, plain error was not raised, it was not argued, it was not dispositive to the issues. There is language with respect to plain error in the Woods case. But to determine that that is a viable method of attack in light of an affirmative stipulation is to render Woods internally inconsistent and irreconcilable with Bush as well as the entire body of law regarding stipulations and defendants being precluded from challenging evidence that they procure, acquiesce to, and do not object to being placed into the record. And it makes all the sense in the world. How can you conduct a plain error analysis with respect to evidence a defendant affirmatively agrees to when you have to establish prejudice? How can you establish prejudice when a defendant agrees to it? In any number of hypotheticals, you could readily cure the error or the discrepancy that we're looking at. So to answer your earlier question, Justice Thomas, I don't think even if the inventory number was a discrepancy in the information, it would not be a discrepancy. It would not be a discrepancy. It would not be a discrepancy. And I think that's what we're trying to do. And I think that's what we're trying to do. In the case pre-Woods and pre-Olivera and people versus Terry, there was many, there were many inconsistencies with respect to the chain of custody. And the court in that case particularly considered the fact that the number was off. The chemist testified. And the chemist said, well, part of the procedure is we look and we compare and these numbers did not match, leading me to believe the chain of custody had not been intact. There was another arrest in the building that day, minutes before. The officer had weighed those. That number had changed. And the court particularly looked at, and it couldn't have been a situation of mishearing or misspeaking because that officer had been questioned several times. Did you recount them? How many? That issue was probed and I think that's what this court was looking at when they were talking about a plain error situation. A procedural default that had been clearly to a certain extent explored or ignored or overlooked by counsel. Leaving open a very distinct possibility that the state would be unable to connect the drugs to what was testified to in court. But more importantly, furthermore, that that chemist should not have been allowed to testify because the relevance hadn't been established. That is the more accurate scenario for plain error. However, there was absolutely no interplay between plain error and a true sufficiency question. What prong are we looking at? Closely balanced fundamental fairness. There is no sufficiency of the evidence question in plain error. It leads to an absolutely extraordinary result of a defendant who not only procedurally defaulted, affirmatively waived, being able to achieve an outright reversal there on appeal. In this case, different than Woods, we don't have the same number of items that was purportedly tested. That's correct, we do have an inconsistency where the Woods case doesn't have any inconsistency. But what we do have is a lot more than in Woods. We have an affirmative words entered into the record that the chain of custody was maintained and proper at all time. We also have police officer talking about the inventory process, which we didn't have in Woods. We had him talking about how he obtained a unique inventory number, kept him on his person in custody and control at all times. That he filled out, he described the box, how big it was, that there was boxes on the outside that he filled out pertinent data, including everything relevant to the investigation that a sergeant came over and double-checked his work. And after verifying that it was all done, he signed off on it a second time. None of that was in Woods. And the difference in numbers is rendered meaningless by the overall stipulation. It becomes an ambiguity, so it is only by looking at the evidence and the light most favorable to the defendant, which of course we know that you can't do, that you are able to jump to the conclusion that somehow the drugs multiplied, which even if you take it a step further, the indictment reads that it was less than one gram of heroin in this case. The stipulation says, the officer said he recovered five packets of heroin. The stipulation as recited by the assistant state's attorney was nine. We still got to .1 gram. All the people had to establish was residue, and it was clear that the chemist testified all of the packets. That was part of the stipulation. So to say that the people. The question is, did they have the wrong grouping of packages? That this was not the grouping that was connected to this defendant? Looking in the light, well, first of all, it was stipulated to, so that is removed from the calculus when you do your analysis. And the chain of custody only moves forward to get to the relevance of the chemist's testimony. Officer Genia testified, this is what I recovered. You have a matching inventory, you have a matching number of items of suspect cocaine, which were identified and established to be cocaine. So how does it become more clear, and you have an ambiguity. You have people saying, yes, the chain of custody was proper and correct at all times. Looking at that in the light most favorable to the people, we've certainly established guilt beyond a reasonable doubt. But in light of the procedural forfeiture compounded by the affirmative waiver, it cannot be analyzed. Certainly not under any plain error analysis. The defendant cannot establish prejudice had he objected. Under the facts and circumstances of this case, it cannot be stated that that remedy couldn't have been cured for any number of reasons. Either a misspeak, putting the chemist on the witness stand to say that this was, here's how many packets there were, or even they could have been commingled in some fashion together, tied into one another. It certainly doesn't mean that you jump to the conclusion that the drugs were substituted. Moreover, even in a plain error situation, what you would do is consider those drugs being part of the quantum of proof, and the remedy would be retrial. It would certainly not be an outright reversal through plain error. And Olivera teaches this, and most recently this court's decision. In that retrial, would the difference in the amount of containers be able to be used? Yes. It would be mounting to an insufficiency in the foundation, allowing the expert to testify. It's not as though applying the exclusionary rule. You got it wrong under some legal principle, this evidence can never come into being. We're saying you didn't lay the proper foundation, go back and do it again, or if you cannot, it doesn't come in. So ultimately what we ask this court to do is to clarify the plain language, I'm sorry, the plain error language in People v. Woods to clarify that it cannot apply in a situation where a defendant is affirmatively waived chain of custody. And certainly under a plain error scenario, an irretrievable breakdown is not two numbers being transposed or the possibility of the misspeak, it must be something far more certain than that in order to satisfy the real purpose behind plain error, and that is to ensure that the defendant has a fair trial, not a windfall. Thank you. Good morning. May it please the court, Ms. Ramiro. I'd like to begin because our positions are obviously very, very diametrically opposed. We're saying we're asking for a full reversal, the State says we can't even get to the point of challenging this. Now, we know as a matter of law, and the State acknowledges this in their reply brief, that a defendant cannot waive a challenge on direct appeal to the sufficiency of the evidence, and correspondingly, and this is critical, because the State is saying defendant stipulated to this evidence, and he can't challenge it. However, in 2004, in the Ryan v. case, defendant stipulated to the entirety of the evidence. The testimony of the complainant, the testimony of the police officer who testified to a statement as given by the defendant, and it was appealed to this court. The conviction was affirmed by the appellate court. It came to this court. There was no controversy over whether the defendant could challenge the sufficiency of the evidence, even though it was stipulated to challenge the sufficiency of the evidence. So having made that point, the State, after they get to this invited error, looks at the stipulation itself. And first, you know, I mean, let's look at the stipulation, because the State at one point said that there was a stipulation to the lab report, and that's not true. They did not stipulate to the lab report. They stipulated to the testimony of the chemist, Daniel Bryant. And in that stipulation, he stipulated to getting the evidence, to getting the packets, and getting nine packets of heroin, which, of course, was a discrepancy as compared to the five packets of heroin, which were recovered by Officer Genia in this case. And then testing it, testing positive for .1 gram of heroin. And then at the end of the stipulation, Bryant's stipulated testimony was that to a reasonable degree of scientific certainty, the chain of custody was complete and that he would be able to identify the items, which if you read that literally, I guess the items he would have identified would have been the nine items that he recovered pursuant to his stipulated testimony. But what's critical about this is this was not a freestanding stipulation to the entire chain of custody. This was merely a stipulation to what the chemist would have testified to. And reading the language of it, all he could testify to is the end of the chain of custody that he knew about. And on that end, he got nine items. And what do we know when we have a discrepancy between the five items and the nine items? Well, we look to the Woods case, and the state contends that under Woods that we have no right to challenge. But it's pages 471 and 472 of Woods state that while generally when you talk about a chain of custody, and of course we know that a chain of custody in a drug case is critical because drugs are so susceptible to tampering, to alteration, to substitution, that's why we need the inventory numbers. That's why we need matching descriptions. Generally, a defendant, if he doesn't object at trial to a foundational element, which in Woods of course it was like missing links to the chain of custody, generally without that objection, he cannot raise for the first time on direct appeal a challenge to anything having to do with the chain. But this court carved out two exceptions. One of course was as to the inventory number, and the other was as to when there is a description of the items that don't match. And this court set forth clearly why that exception exists. It's because when you have that exception, the state's whole job is to link the evidence that is recovered by the police officer, or at least part of their job, one of the elements they have to approve, is linking the evidence recovered by the officer with that which is tested by the chemist. So in order that they will be able to prove that the item possessed by the defendant was in fact a controlled substance. When there is a failure to do, when you do it right, you have a prima facie case, which isn't so good for the defendant. But when you don't do it right, then what you have is a complete breakdown in the chain of custody. And therefore, the state has failed to prove an element it has to prove, that defendant possessed that controlled substance. And so if we agree with your argument, would that allow a defense attorney to agree to an anomalous stipulation, knowing that the error in the stipulation would allow them to raise the sufficiency of the evidence on appeal? Theoretically, would it allow them to do so? Well, it's possible to do so. It's possible to try to argue it at the trial level. I mean, one of the interesting things, this was not your typical appeal in a lot of respects, but of course we went down to the lower court on a Rule 329 motion by the state to correct the record. And it's interesting that what Judge Laws said was that had she read her notes more carefully, once it was determined that the record in this case and the transcript was accurate, is that she would have acquitted. So the judge didn't notice. Here in this case, what we're looking at is not a defense attorney who's laying in the weeds, but a defense attorney. And it's true, the state noted there are a lot of things that the defense counsel did, that he was working hard on the case, but here he just dropped the ball and didn't notice. Well, we don't know that, right? No, we don't know. But the thing is, is that... the proof lies with the state, and that when they fail to satisfy that burden on appeal, regardless of whatever reason that defense counsel, he didn't notice it, he did notice it, whatever, the defendant still has a right to raise the sufficiency of evidence on appeal. So I guess defense counsel would have no obligation to assure that a stipulation's accurate. It's all the burden falls on the state. Well, ultimately, the state is the proponent of the evidence, has to make sure that the stipulation is accurate. And that's something in the Rule 23 order of the appellate court that Justice McBride pointed out, that in a situation like this, because it was asked earlier, was this a written stipulation? No, it was an oral stipulation. But the state could have easily taken measures to make sure that the evidence got in correctly, if in fact there was a mistake. And of course, based on this record, and all we can consider as this record, we don't know if there's a mistake. In light of that, shouldn't it go back for another trial? No, it shouldn't. And our position on this is, is that once you, once you are not able to link the substance recovered to the substance tested, this court clearly said in Woods, this does represent a failure of proof by the state. And once you have a failure of proof, the only remedy available is reversal. Otherwise, you would contravene double jeopardy principles. And you cannot retry when the evidence is insufficient. Does your argument fail, counsel, if this court agrees with opposing counsel that it was a stipulation as to chain of custody, rather than, as in Brown, forensic testing? We would argue no. Because what our position is, is that you can't just look at one portion, this stipulation. And again, to the chemist stating in his scientific opinion that the chain of custody was complete, that you still can't ignore the discrepancy in the numbers. That doesn't override it. Because the state asks, you know, about looking at it in the light most favorable of the state. Well, the problem is, because this type of evidence traditionally has been found insufficient, as in the Terry case and the Gibson case cited in my brief, that this is evidence that demands reversal. And what about the question that I asked opposing counsel with respect to, you agree that the inventory search number was correct? The inventory numbers do match. So it's a discrepancy of the description rather than an inventory number. Does that save it or not? No, I don't think it saves it. Because the problem you have when you don't have this match, one, this is, you know, this court in Woods looked at two situations in which, whether it be the inventory numbers not matching or the description of items not matching, either of those are fatal to the state's case. It didn't say both. It said these are the two situations under which the evidence can be challenged. Because otherwise what you're left with here, regardless of the inventory numbers matching, is we don't know with those nine items whether or not, are those five items plus four additional items or nine entirely different items? And it calls into question whether the chemist tested the items that were recovered from Mr. Alsop. So it is our position that the state failed to prove an element of its case and that Mr. Alsop was allowed to challenge this for the first time in direct appeal because of the basic Illinois law about that you can't waive a challenge to the sufficiency of the evidence, the exceptions in Woods, the fact that stipulated evidence, you can challenge the sufficiency of evidence, excuse me, even if it's stipulated to, and that the proper remedy is reversal of the conviction. So we ask this Court to affirm the First District. If there are no further questions. On page H40 of the record, Assistant State's Attorney, would be a stipulation with respect to the lab in this case. She then went on to talk about what the chemist would testify to. There was absolutely a mention of the lab in this case, and there is no question that a stipulated bench is not tantamount to a guilty plea. So you cannot challenge specific facts that you specifically admit into evidence, no more than had defendant be allowed to testify or challenge on appeal, well, it was a thousand, it was how many feet between point A and point B, but because the state didn't discuss whether or not the investigator's measuring device was accurate and calibrated, that he'd be able to challenge it there on appeal. The exact argument brought today before this Court was already rejected in Woods with respect to a chain of custody only applying to a portion, in other words, what the chemist had to testify, that it didn't talk about that. Woods itself rejected that, and this Court directed practitioners, if you mean to preserve that error, you better be a little more precise. And guess what, we have an example of it right here with a thousand feet stipulation. And it's not reasonable to assume a forensic expert would talk about the chain of custody being proper and accurate of the narcotics at all times if that's not what he meant. It's not reasonable to assume that they don't compare the items and determine that they match. That is to take something and bring it in the light most unfavorable to the people and resurrect the long-abandoned reasonable hypothesis of innocent standard, which you cannot do. If the people didn't prove a prima facie case, it is a matter of evidence, and we shouldn't have been allowed to have the chemist to testify. That's what it comes down to. There is no, the argument becomes circular. Something cannot be both evidentiary and an element of the offense. The analysis is unworkable to blur those lines. And insofar as what Judge Laws has to say about that she dropped the ball, she was just wrong. The public defender down below was in a trick bag. If he knew about this, and this is truly the status of the law, and you hear the state, what if it's written and they interpose two inventory numbers, or they cite the number wrong? Now, you're supposed to object to be a good practitioner, but what if you do? You've got an automatic reversal waiting for you in the appellate court based upon the rule. Defendants would have the appellate court read into what this court stated and would. And that's just not correct. What type of ethical situation would it be if it was private counsel and he was the same lawyer down below? Could you as an officer of the court come in and say there was nine items knowing full well that there wasn't, that there was five? It doesn't place him in a fair situation, and the truth of the matter is, the party is meant to take that out of the calculus, and they did. And the court ruled properly, and Judge Laws did not abuse her discretion by accepting that stipulation. If defense counsel has a built-in reversal if it reaches the appellate court, why wouldn't he have a built-in not guilty at the trial court? Because conscientiously he could not do that, and this was answered in Bush. Defense counsel cannot complain about a stipulation being not precise or in error when he jointly places it into evidence. It's not the people's neglect, and to a certain extent it is, and I don't likely condone that type of error being made. But this is jointly entered. You cannot just punish people for a mistake when the defendant participates in entering that evidence into the record. And this court has long recognized the defendant cannot complain of errors that he invites, procures, or acquiesces in. And that's exactly what you would have. And for these reasons, that interpretation of the plain error language in Woods just simply cannot stand. Thank you very much. Thank you, counsel. Case number 108-354 will be taken under advisement of agenda number 3.